UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                                 :
**DAMIAN LEWIS**,                                                :
                                                                 :
                                    Plaintiff,                   :
                                                                 :    **MEMORANDUM DECISION AND**
                                                                 :    **ORDER**
                   – against –                                   :
                                                                 :    23-CV-857 (AMD) (RML)
                                                                 :
**EXPERIAN INFO. SOLS., INC.,**                                  :
**TRANSUNION INFO. SERVS., LLC,**                                :
**EQUIFAX INFO. SERVS., LLC, AMERICAN**                          :
**EXPRESS CO., BARCLAYS BANK**                                   :
**DELAWARE, CITIGROUP INC., DISCOVER**                           :
**BANK, CLOVER COMMERCIAL CORP.,**                               :
**CREDIT COLLECTION SERV., FRANKLIN**                            :
**COLLECTION SV, TBF FINANCIAL LLC**, and                        :
**CAINE & WEINER CO., INC.,**                                    :
                                                                 :
                                    Defendants.                  :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On February 1, 2023, the *pro se* plaintiff filed this action against the defendants, alleging

violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the New York

Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. Law § 380 *et seq.*, the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Consumer Financial

Protection Act, 12 U.S.C. §§ 5481 *et seq.*, and New York General Business Law § 349, as well

as New York common-law claims of invasion of privacy and negligent, wanton, and/or

intentional hiring and supervision of incompetent employees or agents.  (ECF No. 1 ¶¶ 172–

251.)  Before the Court are motions to dismiss by Experian Information Solutions, Inc.

("Experian"), TransUnion Information Services, LLC ("TransUnion"), and Equifax Information

Services, LLC ("Equifax") (together, "Credit Reporting Agencies") (ECF No. 42); Clover

Commercial Corp. ("Clover") (ECF No. 45); and Franklin Collection SV ("Franklin") (ECF No. 48).[1]  The motions are granted, as explained below.

## BACKGROUND[2]

Although the complaint is somewhat difficult to interpret, the plaintiff appears to allege the following facts, which are assumed to be true for purposes of this motion.  *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

The plaintiff claims that he discovered "several 'inaccurate, incomplete, and/or misleading'" "tradelines"[3] in credit reports provided to him by Annualcreditreport.com and generated by Experian, TransUnion, and Equifax.  (ECF No. 1 ¶ 34.)[4]  On about February 12, 2022, the plaintiff filed disputes with the Credit Reporting Agencies about the tradelines, which

---

[1] The defendants Credit Control Services, Inc. (d/b/a Credit Collection Services), Discover Bank, and Barclays Bank Delaware filed answers to the complaint.  (ECF Nos. 20, 24, 26.)  American Express Co., Citigroup Inc., TBF Financial LLC and Caine & Weiner Company, Inc. have not yet appeared in the action.

[2] The facts are taken from the complaint (ECF No. 1), the plaintiff's oppositions (ECF Nos. 49, 50, 51), and Clover and Franklin's exhibits in support of their motions to dismiss (*see* ECF Nos. 45-4, 45-5, 45-6, 45-7, 48-1 at 8).  When a plaintiff proceeds *pro se*, a court "may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint."  *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).  For purposes of this motion, I accept as true the factual allegations in the complaint and the opposition papers and draw all reasonable inferences in the plaintiff's favor.  *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).  Further, the Court may consider Clover and Franklin's exhibits because they are "incorporated into the complaint by reference, public records, [or] documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit."  *Owoyemi v. Credit Corp. Sols. Inc.*, 596 F. Supp. 3d 514, 518 (S.D.N.Y. 2022) (citing *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013)); *see also Costa v. Astoria Fed. Sav. & Loan Ass'n*, 995 F. Supp. 2d 146, 148–49 (E.D.N.Y. 2014) (noting that a court may consider such documents without converting a motion to dismiss into a motion for summary judgment).

[3] "A tradeline [is] a record of activity for any type of credit extended to a borrower and reported to a credit reporting agency."  *Hart v. Simon's Agency, Inc.*, No. 19-CV-342, 2022 U.S. Dist. LEXIS 178298, at *2 (N.D.N.Y. Sept. 30, 2022) (citation omitted).

[4] The plaintiff does not allege the date that he discovered these entries.

were "associated with" Clover, Franklin, and the other defendants in this action.  (*Id.* ¶ 39.)  On about March 14, 2022, Experian "generated a report of the alleged reinvestigation" into the plaintiff's credit report, but the report "did not resolve the dispute."  (*Id.* ¶ 40.)  TransUnion and Equifax also may have conducted a "reinvestigation" of the plaintiff's credit report but did not give the plaintiff "written notice" of the results.  (*Id.* ¶ 41.)  The plaintiff filed four "additional disputes" with the Credit Reporting Agencies on March 15, April 1, October 11, and October 26, 2022, in which he "provid[ed] more information"—which he does not describe—about the "inaccurate, incomplete, and/or misleading tradelines."  (*Id.* ¶ 42.)

One of those tradelines, reported by Clover, reflected an auto financing loan on which the plaintiff was in default.  (ECF No. 45-6 at 1; ECF No. 45-7 at 2; ECF No. 51 at 25, 27.)[5]  The plaintiff alleges that the tradeline improperly "appear[ed] twice" on his TransUnion credit report "with contradicting information" (ECF No. 1 ¶ 66; *see also* ECF No. 45-6 at 1; ECF No. 51 at 15, 17–18, 20);[6] however, his Experian report shows that Exeter Finance, LLC reported the so-called "duplicate" tradeline, which referred to a different auto loan that had been paid in full (ECF No. 45-7 at 2; ECF no. 51 at 28).

The plaintiff also asserts that the defendants "reinserted biographical information" (ECF No. 1 ¶ 87)[7]—which the plaintiff does not identify—into his credit report "that was successfully

---

[5] On October 17, 2016, the plaintiff entered into a "retail installment contract" with non-party Brooklyn Mitsubishi, an auto dealership (ECF No. 45-4); the contract was assigned to Clover on October 17, 2016 (ECF No. 45-5 (notice of assignment)).

[6] The two tradelines have entirely different data, including "account number," "date opened," "high credit," "terms," "date verified," "balance," and "amount past due," except that both have "Clover Comm" listed as the "subname."  (ECF No. 45-6.)  Neither the plaintiff nor the credit reports define the term "subname," but it appears that it refers to the entity that provided information about the tradeline.

[7] The complaint alleges that the Credit Reporting Agencies "reinserted previously disputed and deleted biographical information from [the plaintiff's credit file]" (ECF No. 1 ¶ 87) but the opposition appears to argue that only Equifax did so (ECF No. 51 at 9).

deleted previously without sending the required notice and without certifying its accuracy" (ECF No. 51 at 9) and that "Experian [was] missing multiple months of trended data on numerous accounts," including the Clover tradeline (*id.*; *see also* ECF No. 1 at 71.)

At some point, the plaintiff asked the Credit Reporting Agencies for "a description of the procedure [they] used to determine the accuracy and completeness of the information" in the credit reports, as well as the business name, address, and telephone number of "any furnisher of information contacted in connection with" the reports, but the Credit Reporting Agencies did not give him this information.  (ECF No. 1 ¶ 43.)  He also asked that they give him "a complete copy of his full consumer file disclosure that contains all the information . . . in their possession," including the "statement of dispute," which was "missing" on his credit reports (*id.* ¶¶ 60–62), but they did not do so (*id.* ¶¶ 61, 175(d)).

The plaintiff alleges that the Credit Reporting Agencies added "inaccurate, incomplete, and/or misleading collection amounts" "without properly verifying" the information, did not complete the "data fields" in the credit reports "in such a way to assure information being furnished is . . . accurate," "ignore[d] and refus[ed] to acknowledge the evidence" that the plaintiff provided them about the entries' inaccuracies, "chose not to conduct a reasonable investigation," "endorsed the reporting of false information," and did not fix the false or misleading entries.  (*Id.* ¶¶ 45, 48, 50, 52, 54.)  According to the plaintiff, the Credit Reporting Agencies were "willful, malicious, reckless, wanton, and/or negligent, and failed to be reasonable in their procedures to assure maximum possible accuracy of the information . . . in his credit file."  (*Id.* ¶ 45.)  He alleges that the Credit Reporting Agencies "collu[ded]" in "refus[ing] to either fix the deficiencies or delete the account" (*id.* ¶ 85), and that they "have a policy to favor their paying customers," like the other defendants, "rather than adhering to the

requirements" of state and federal laws (*id.* ¶ 148), by "'park[ing]' false information on . . . a consumer's credit reports" and "refus[ing] to properly update credit reports of consumers" so that "the consumer will be forced to pay off any listed balances in order to obtain favorable credit terms, refinancing or to qualify for credit related or loan products, or to increase the consumer's credit score" (*id.* ¶¶ 151–52).

As for the other defendants, the plaintiff alleges that they "knowingly[] and/or recklessly reported false credit information to [his] file," even though the plaintiff gave them "more than sufficient information in the dispute," and even though their "internal sources" had the accurate information. (*Id.* ¶¶ 106, 122.) They either "did not conduct a detailed examination of the documents underlying [his] transactions before responding to inquiries about [his] alleged debts," "investigat[e] . . . the disputed information," or "review all relevant information" that the plaintiff provided about the dispute, or chose "willfully, recklessly, maliciously, and/or negligently" to decline to do so. (*See, e.g.*, *id.* ¶¶ 110–13, 115–16, 119–22.)

Further, the plaintiff alleges that Clover, Franklin, Credit Collection, TBF Financial, and Caine & Weiner "do not legally own the alleged debts they are attempting to collect from [him]." (*Id.* ¶ 145.) They "did not take reasonable steps to assure the integrity, accuracy, and completeness of the information in their possession" about the debts, or "notify and/or communicate with" the plaintiff before "reporting or attempting their debt collection efforts." (*Id.* ¶¶ 146–47.) He says that they are not licensed by the State of New York to collect debts. (*Id.* ¶ 141.)[8] He also says that if they are licensed in New York, they "engaged in a 'phantom debt collection scheme' to collect on debts known to be, or should have been known to be time

---

[8] Franklin is registered with the New York State Department of Consumer Affairs ("DCA") as a "debt collection agency." (ECF No. 48-1 (copy of DCA website showing Franklin's registration)).

barred, illegal, and/or not owned by [the plaintiff]" in order to "extort money from [him]."  (*Id.* ¶¶ 142–43.)

According to the plaintiff, the defendants "directly and proximately caused" him "past and future monetary loss, past and future damage to [his] credit worthiness, past and future mental distress and emotional anguish, and other damages."  (*Id.* ¶ 160.)  The plaintiff claims that he "suffer[ed] actual damages" "in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions," and "unjustified and abusive invasions of personal privacy."  (*Id.* ¶ 166.)  He also received "less attractive terms"—from entities that he does not identify—"than [he] would have received had his information been accurate."  (*Id.* ¶¶ 37, 99, 139.)  In addition, "multiple institutions" denied him "credit related and loan products" (*id.* ¶ 139), which caused him "frustration, embarrassment, and humiliation" (*id.* ¶ 167).

The plaintiff submits three letters from financial institutions: a September 27, 2022 letter from Sofi Bank denying his application for an unspecified financial product (ECF No. 49 at 22–23; ECF No. 50 at 15–16; ECF No. 51 at 24–25), a September 26, 2022 email from Fortiva Credit Card denying his application for a credit card (ECF No. 51 at 29–30), and an October 5, 2022 letter from Mission Lane LLC denying his application for the Mission Lane Cash Back Visa Credit Card (ECF No. 51 at 27).  Citing the plaintiff's Experian and TransUnion credit reports, Sofi Bank denied his application for the following reasons: "[s]erious delinquency, and public record or collection filed," "[l]ength of time accounts have been established," "[n]umber of accounts with delinquency," and "[r]atio of balance to limit on bank revolving or other rev accounts too high."  (*See, e.g.*, ECF No. 51 at 24.)  Fortiva Credit Card denied his application

because it was "unable to verify [his] Social Security Number" (*id.* at 29),[9] and Mission Lane

LLC's "principal reason[]" for denying his application was because it was "[u]nable to verify

credit references" (*id.* at 27).

The plaintiff seeks monetary damages, including "statutory, actual, compensatory,

nominal, [and] punitive" damages and costs and fees, as well as an order "permanently

enjoin[ing] [the d]efendants from committing future violations of the state and federal laws

mentioned in [the c]omplaint," "disgorg[ing] . . . [the defendants'] ill-gotten revenues,"

"impos[ing] civil money penalties," and any "additional relief as the Court may determine to be

just and proper." (*Id.* at 55–56.)

## LEGAL STANDARD

Article III of the United States Constitution "confines the federal judicial power to the

resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203

(2021). "For there to be a case or controversy under Article III, the plaintiff must have a

'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S.

811, 820 (1997)). At all stages of litigation, "the party invoking federal jurisdiction bears the

burden of establishing the[] elements" of Article III standing. *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561 (1998)). "[T]o establish standing, a plaintiff must show (i) that he suffered an

injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was

likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial

relief." *Ramirez*, 141 S. Ct. at 2203 (citing *Lujan*, 504 U.S. at 560–61; *see also Calcano v.*

---

[9] Fortiva also informed the plaintiff of his Equifax credit score, and explained that Equifax "noted that the following key factors adversely affected" his score: "[n]o open accounts in [his] credit file," "[n]o open bankcards in [his] credit file," "[b]alances on delinquent or derogatory bankcards are too high," and "[l]ack of real estate secured loan information." (ECF No. 51 at 29.) However, Fortiva did not cite these factors as reasons for denying his credit card application.

*Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022).  "[S]imply alleging a statutory violation does not demonstrate a concrete injury."  *Desmarattes v. Equifax, Trans Union, & Experian*, No. 22-CV-3330, 2023 U.S. Dist. LEXIS 218281, at *28 (E.D.N.Y. Dec. 7, 2023) (citing *Ramirez*, 141 S. Ct. at 2205).  Instead, the plaintiff must plausibly allege that the statutory violation "resulted in a concrete injury, *i.e.*, a 'physical, monetary, or cognizable intangible harm[] traditionally recognized as providing a basis for a lawsuit in American courts.'"  *Id.* (quoting *Harty v. W. Point Realty, Inc.*, 28 F.4th 425, 442–43 (2d Cir. 2022)).

Under Rule 8 of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While a complaint need not be a model of clarity, it must give the defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Dismissal under Rule 8 is appropriate only in "those cases in which the complaint is so confused, ambiguous, vague, or otherwise intelligible that its true substance, if any, is well disguised."  *Owens v. McCall*, 5 F. App'x 15, 16 (2d Cir. 2001) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

A complaint must also plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and alterations omitted).

Because the plaintiff is proceeding *pro se*, the Court construes his complaint liberally and evaluates it by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The plaintiff's claims must be "read to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).

## DISCUSSION[10]

### I.   Standing

As a threshold matter, the Court must evaluate whether the plaintiff has standing to sue. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to

---

[10] The defendants argue that the complaint should be dismissed because it is an "unintelligible" "shotgun complaint" that violates Rules 8 and 10 of the Federal Rules of Civil Procedure. (*See* ECF No. 43 at 5–17; ECF No. 45-1 at 4–5; ECF No. 48-1 at 1–2.) *See, e.g.*, *Manbeck v. Micka*, 640 F. Supp. 2d 351, 366 (S.D.N.Y. 2009) (shotgun pleadings "set[] forth a potpourri of vague and conclusory allegations . . . that illustrate[] . . . utter disrespect for Rule 8 . . . making it extremely difficult to discern the precise nature of the claim[s]" (quoting *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 625 (S.D.N.Y. 1999)); Fed. R. Civ. P. 8(a)(2) (requiring a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); Fed. R. Civ. P. 10(b) (requiring claims or defenses to be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances").

"When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, or to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Dismissal "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citing *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)). The complaint includes repetitive, "vague and conclusory allegations" that make it "difficult to discern the precise nature of the [plaintiff's] claim[s]." *Manbeck*, 640 F. Supp. 2d at 366. Nevertheless, the Court analyzes each of the plaintiff's claims to determine whether any of them can withstand a motion to dismiss. *Cf. In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450, 2015 U.S. Dist. LEXIS 155383, at *99 (S.D.N.Y. Nov. 12, 2015).

determine whether subject-matter jurisdiction exists, even when no party challenges it." (citation omitted)); *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020) (where a plaintiff lacks standing to bring a claim, the court lacks subject-matter jurisdiction over the claim).

The plaintiff has not sufficiently pleaded that he suffered "physical, monetary, or cognizable intangible harm" because of the defendants' conduct. *Harty*, 28 F.4th at 442–43 (quoting *Ramirez*, 141 S. Ct. at 2206). He alleges in a conclusory manner that the defendants "directly and proximately caused" him "past and future monetary loss, past and future damage to [his] credit worthiness, past and future mental distress and emotional anguish" (*id.* ¶ 160), as well as "anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions" (*id.* ¶ 166). The defendants also allegedly made "unjustified and abusive invasions of [his] personal privacy." (*Id.*) Further, as a result of the defendants' conduct, "multiple institutions" denied him "credit related and loan products" (*id.* ¶ 139), which caused him "frustration, embarrassment, and humiliation" (*id.* ¶ 167). These allegations are vague and conclusory, and courts have found similar claims insufficient to establish standing. *See, e.g.*, *Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (conclusory allegations of "injury to [the plaintiff's] credit worthiness," "increased difficulty obtaining credit," and "embarrassment, humiliation and other emotional injuries" insufficient, "[w]ithout more," for Article III standing); *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (conclusory allegations of "mental and emotional pain, anguish, humiliation, and embarrassment of credit denial" insufficient for Article III standing).

The plaintiff also alleges that he received "less attractive terms" on financial products "than [he] would have received had his information been accurate" (ECF No. 1 ¶ 139) but he

does not identify which entities gave him the "less attractive terms" or what the terms were.  Nor does he explain how the credit reports' inaccuracies resulted in the unfavorable terms.

Finally, the plaintiff alleges that he was "den[ied] . . . credit related and loan products from multiple institutions due to information furnished by the [d]efendants." (*Id.*; *see also id.* ¶ 167.)  To support this claim, the plaintiff submitted three letters from financial institutions— Sofi Bank, Fortiva Credit Card, and Mission Lane LLC—denying his applications for various financial products.  These exhibits do not show that inaccuracies in the plaintiff's credit reports caused the banks to deny him whatever it was that he was seeking.

Fortiva and Mission Lane did not deny his credit card applications because of anything in his credit reports—Fortiva denied his application because it was "unable to verify [his] Social Security Number" (ECF No. 51 at 29), and Mission Lane because it was "[u]nable to verify [his] credit references" (*id.* at 27).  Therefore, these letters do not show that the defendants—either the Credit Reporting Agencies, Clover, or Franklin—caused the plaintiff a concrete and particularized harm.  *See, e.g.*, *Gross*, 607 F. Supp. 3d at 273 (finding no injury where the plaintiff's "alleged harms [were] not expenses, costs, any specific lost credit opportunity, or specific emotional injuries"); *Desmarattes*, 2023 U.S. Dist. LEXIS 218281, at *29–30 (finding no injury where the plaintiff alleged "no specific instances in which Trans Union's credit reporting resulted in a denial of credit").

The only bank to cite his credit history as a reason for denying his application was Sofi Bank.  In denying the plaintiff an unspecified financial product, Sofi Bank cited portions of his Experian and TransUnion credit reports—"[s]erious delinquency, and public record or collection filed," "[l]ength of time accounts have been established," "[n]umber of accounts with delinquency," and "[r]atio of balance to limit on bank revolving or other rev accounts too high"

(*id.* at 24)—but the plaintiff does not tie these reasons to particular errors or deficiencies in the credit reports, *Desmarattes*, 2023 U.S. Dist. LEXIS 218281, at *28.[11]  In any event, the Sofi letter referred to only two of the defendants, and could not establish standing against the other moving defendants.

Because the plaintiff did not plead sufficient facts to plausibly suggest that the defendants' statutory violations caused him to suffer a concrete injury as required by Article III, the Court does not have subject-matter jurisdiction over the plaintiff's claims.  As discussed below, the Court grants the plaintiff leave to replead some of his claims; in his amended complaint, the plaintiff should allege additional facts to show that he has standing to bring those claims.  Nevertheless, the Court addresses the merits of the defendants' motion.

## II.     Failure to State a Claim

### a.     Fair Credit Reporting Act Claims (Count I)

The plaintiff brings claims under various provisions of the FCRA against all defendants. (*See* ECF No. 1 ¶¶ 172–202.)  Congress enacted the FCRA to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."  15 U.S.C. § 1681(b).  Accordingly, the FCRA "regulates the activities of consumer reporting agencies and the use and dissemination of consumer credit information." *Paul v. Am. Express*, No. 22-CV-5728, 2023 U.S. Dist. LEXIS 1439, at *4 (S.D.N.Y. Jan. 3, 2023) (citing 15 U.S.C. § 1681 *et seq.*).  The FCRA places obligations on three types of entities

---

[11] It could be that the "[s]erious delinquency" is connected to the allegedly inaccurate tradeline about the plaintiff's outstanding auto loan, discussed below, but the plaintiff does not say that, nor does the letter make that connection.

involved in consumer credit: consumer reporting agencies ("CRAs"), users of consumer reports, and furnishers of information to consumer reporting agencies.[12]  *Zlotnick*, 583 F. Supp. 3d at 390 (quoting *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847, 2005 U.S. Dist. LEXIS 17052, at *6 (E.D.N.Y. May 9, 2005)).

>           i.        *15 U.S.C. §§ 1681e(b) and 1681i*

Section 1681e(b) of the FCRA requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer's credit report.  15 U.S.C. § 1681e(b).  To prevail against a CRA in an action brought under Section 1681e(b), a plaintiff must show that:

> (1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

*Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367, 2019 U.S. Dist. LEXIS 100119, at *6 (E.D.N.Y. June 14, 2019) (quoting *Gestetner v. Equifax Info. Servs., LLC*, No. 18-CV-5665, 2019 U.S. Dist. LEXIS 40415, at *3–4 (S.D.N.Y. Mar. 13, 2019); collecting cases)).

Section 1681i of the FCRA requires that "if a consumer notifies a [CRA]—either directly or indirectly—of a dispute as to the accuracy of any item of information contained in [his] file, within thirty days of notification, the [CRA] shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Desmarattes*, 2023 U.S. Dist. LEXIS 218281, at *22 (quoting *Khan*, 2019 U.S. Dist. LEXIS 100119, at *8).  If the

---

[12] "The term 'furnishers of information' is not defined in the statute, *see* 15 U.S.C. § 1681a, but it has been interpreted to mean 'entities that transmit, to credit reporting agencies, information relating to debts owed by consumers."  *Paul*, 2023 U.S. Dist. LEXIS 1439, at *4 n.1 (quoting *Kane*, 2005 U.S. Dist. LEXIS 17052 at *6).

CRA determines after reinvestigation that the disputed information is inaccurate, incomplete, or cannot be verified, the agency must delete or modify the disputed item of information and "notify the furnisher of that information that the information [was] modified or deleted." 15 U.S.C. § 1681i(a)(5)(A)(i). If disputed information is deleted from a consumer's file following reinvestigation, the CRA may not reinsert the information "unless the person who furnishes the information certifies that the information is complete and accurate." 15 U.S.C. § 1681i(a)(5)(B)(i). If the CRA does reinsert any previously deleted information, it must provide notice to the consumer, within five business days, that the information has been reinserted. 15 U.S.C. § 1681i(a)(5)(B)(ii)-(iii).

The plaintiff has not sufficiently alleged that the information the defendants reported about him was incorrect, or why the information was inaccurate. *Phipps v. Experian*, No. 20-CV-3368, 2020 U.S. Dist. LEXIS 105879, at *7 (S.D.N.Y. June 15, 2020); *Cabrera v. Experian*, No. 21-CV-8313, 2021 U.S. Dist. LEXIS 215750, at *6–7 (S.D.N.Y. Nov. 5, 2021) (collecting cases). The complaint alleges that the plaintiff informed the defendants of "more than 100 . . . inaccuracies" in his credit reports that have not yet been corrected (ECF No. 1 ¶ 86(e)) but identifies only two inaccurate tradelines—two automobile loans with Clover that appear on the plaintiff's TransUnion credit report (ECF No. 1 ¶ 66, 130). According to the plaintiff's credit reports (ECF Nos. 45-6 (Apr. 2023 TransUnion report), 45-7 (Sept. 2020 Experian report)), it appears that one loan was opened in October 2015 and is closed, and the other loan, opened in October 2016, is delinquent and has been "placed for collection" (ECF No. 45-6 at 2). The plaintiff asserts that Clover did not mark the October 2016 loan as "disputed," published information about the loan it "knew to be inaccurate and incomplete," claimed that the plaintiff "owed debts in excess of the stated amount," and "reported the account open date wrong." (ECF

No. 49 at 6.) It appears that one of the credit reports attributed the closed October 2015 tradeline to the wrong furnisher; the TransUnion report lists Clover as the "subname" for the tradeline and the Experian report lists "Exeter Finance LLC." (ECF No. 45-6 at 2; ECF No. 45-7 at 3.) Unless Exeter Finance LLC assigned its loan to Clover between September 2020 and April 2023, one of these reports must be inaccurate. Nevertheless, the plaintiff has not stated a claim because he does not plausibly allege that TransUnion's or Experian's procedures or reinvestigations into this error were "unreasonable" or that he was injured by the misattribution of the tradeline.[13]

The plaintiff also asserts in his opposition to the Credit Reporting Agencies' motion that Equifax "reinserted biographical information" into his credit report "that was successfully deleted previously without sending the required notice and without certifying its accuracy," and that "Experian [was] missing multiple months of trended data on numerous accounts," including the Clover tradeline. (ECF No. 51 at 9.) The plaintiff provides no details about the "biographical information," or the "missing months of trended data"—no dates, no descriptions of the "biographical information" or the "trended data," or the accounts. Nor does the plaintiff sufficiently allege that Equifax and Experian "were willful or negligent in their noncompliance" with Section 1681i, or how these alleged errors harmed him. *Perez v. Experian*, No. 20-CV-9119, 2021 U.S. Dist. LEXIS 198281, at *28 (S.D.N.Y. Oct. 14, 2021) ("Merely stating that the violation was 'willful' or 'negligent' without more is insufficient."), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 211987 (S.D.N.Y. Nov. 2, 2021). *See also, e.g.*, *Braun v. Client*

---

[13] Indeed, the Exeter Finance LLC tradeline states that the account was "paid as agreed" and "closed" as of September 2016; this would only improve the plaintiff's credit standing. (*See* ECF No. 55 at 4–5 (citing ECF No. 49 at 20, 28).)

It may be that the plaintiff is arguing that he is not legally obligated to pay the delinquent automobile loan; even if he does not have to pay off the loan, the claim must be dismissed because "inaccuracies that turn on legal disputes are not cognizable under the FCRA." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023).

*Servs. Inc.*, 14 F. Supp. 3d 391, 397 (S.D.N.Y. 2014) ("to survive a motion to dismiss, the . . .

complaint must allege specific facts as to the defendant's mental state" when it violated the

FCRA); *Perl v. Am. Express*, No. 11-CV-6899, 2012 U.S. Dist. LEXIS 7719, at *6 (S.D.N.Y.

Jan. 19, 2012) ("While [the plaintiff] assert[s] that each defendant's FCRA violation was willful,

[he] do[es] so in a conclusory manner . . . . [He] ha[s] failed to allege any facts related to [the

d]efendants' state of mind when they allegedly [violated the FCRA].").

      Accordingly, the plaintiff's Section 1681e(b) and 1681i claims must be dismissed against

the CRAs.  These claims against Clover and Franklin also must be dismissed; only CRAs may be

held liable for claims under Sections 1681e(b) and 1681i, and Clover and Franklin are furnishers

of information, not CRAs.  *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 140

(E.D.N.Y. 2005) (citing *Rush v. Macy's New York, Inc.*, 775 F.2d 1554, 1557 (7th Cir. 1985)).

      *ii.*    *15 U.S.C. § 1681g*

      Section 1681g requires that CRAs, "upon request, . . . clearly and accurately disclose to

the consumer . . . [a]ll information in the consumer's file at the time of the request."  15 U.S.C.

§ 1681g(a)(1).  The plaintiff has not sufficiently alleged that the Credit Reporting Agencies did

not comply with this requirement.  Instead, he merely recites the statutory language, and claims

that the "file" he received from the CRAs was inaccurate and incomplete (*see, e.g.*, ECF No. 1

¶ 175(d) (alleging that the CRAs "failed to provide [him with] his full consumer file")) because

the "statement of dispute" was missing.  (*Id.* ¶¶ 61–62.)  However, he does not allege that he

filed the "brief statement setting forth the nature of the dispute" that Section 1681i(b) requires, so

the defendants "could not possibly have included it in his credit report," nor would it have been

in his full consumer file.  *Okocha v. Trans Union LLC*, 2011 U.S. Dist. LEXIS 39998, at *27

(E.D.N.Y. Mar. 31, 2011) (a CRA need not "provide a statement of dispute unless one is

provided to it" (citing 15 U.S.C. § 1681i(c)).  The exhibits to the complaint—pages-long

inquiries to the CRAs about the allegedly inaccurate information on his credit reports—do not constitute a "statement of dispute." *See id.* Moreover, the plaintiff alleges that his credit reports have over 100 largely unspecified inaccuracies, but does not specify which tradelines should have included the purported "statement of dispute." The plaintiff has not given the CRAs fair notice of the grounds upon which his claim rests; accordingly, the claim must be dismissed. *Herrera v. Navient Corps.*, No. 19-CV-6583, 2020 U.S. Dist. LEXIS 122710, at *10 n.7 (E.D.N.Y. July 13, 2020) (citing Fed. R. Civ. P. 8(a)(2)).

The claim also must be dismissed against Clover and Franklin because Section 1681g applies only to CRAs. *Caltabiano*, 387 F. Supp. 2d at 140.

> ### iii.    15 U.S.C. §§ 1681n and 1681o

Sections 1681n and 1681o do not provide a basis for relief; rather, they provide for private rights of action under the FCRA for willful and negligent noncompliance "with any requirement imposed" by other provisions of the statute. *Perez*, 2021 U.S. Dist. LEXIS 198281, at *28. Accordingly, to the extent the plaintiff brings claims under these provisions independent of another FCRA requirement, they must be dismissed. (*See, e.g.*, ECF No. 1 ¶¶ 44, 184, 186.)

> ### iv.    15 U.S.C. § 1681s-2

Section 1681s-2(a) prohibits "furnishing, to a credit reporting agency, any information that the person knows is inaccurate or consciously avoids knowing is inaccurate." *Kane*, 2005 U.S. Dist. LEXIS 17052, at *7–8. The plaintiff's Section 1681s-2(a) claim must be dismissed against all moving defendants because "there is no private cause of action" for that section of the FCRA. *Id.* at *9 (citing 15 U.S.C. § 1681s-2(d)). (*See also* ECF No. 45-1 at 7–8.) Rather, the FCRA "limits the enforcement of this subsection to government agencies and officials." *Id.*

(quoting *Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475, 2002 U.S. Dist. LEXIS 17780, at *12–13 (S.D.N.Y. Sept. 20, 2002) (collecting cases)).[14]

Section 1681s-2(b) "governs the furnishers' duty once notice is received from a [CRA] that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency." *Paul*, 2023 U.S. Dist. LEXIS 1439, at *5 (quoting *Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 77–78 (W.D.N.Y. 2018)).  As relevant here, the furnisher is required to "conduct an investigation with respect to the disputed information" after receiving notice from a CRA.  15 U.S.C. § 1681(b)(1).  To state a Section 1681s-2(b) claim, a plaintiff must show that "(1) a furnisher received notice of a credit dispute from a [CRA] (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Paul*, 2023 U.S. Dist. LEXIS 1439, at *5 (quoting *Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148, 2019 U.S. Dist. LEXIS 4889, at *10 (W.D.N.Y. Jan. 10, 2019)).  The plaintiff does not allege that Clover or Franklin failed to conduct a reasonable investigation, let alone that their failure to do so was negligent or willful.  Rather, he makes the "naked assertion" that the defendants did not comply with their statutory duties, without providing any supporting facts.  *Iqbal*, 556 U.S. at 678.  (*See, e.g.*, ECF No. 1 ¶¶ 107–135, 191.)  Accordingly, the claim must be dismissed against Clover and Franklin.[15]

---

[14] Although the plaintiff may not enforce the terms of Section 1681s-2(a) through a private civil lawsuit, he "can report violations to the Federal Trade Commission, which is authorized to enforce the terms of Subsection (a) under the FCRA." *Kane*, 2005 U.S. Dist. LEXIS 17052, at *10–11 (citing *Aklagi v. Nationscredit Fin. Servs. Corp.*, 196 F. Supp. 2d 1186, 1194 (D. Kan. 2022); *Hasvold v. First U.S.A. Bank, N.A.*, 194 F. Supp. 2d 1228, 1235 (D. Wy. 2002)).

[15] The claim must also be dismissed against the Credit Reporting Agencies because Section 1681s-2(b) applies only to furnishers.

b.    **Fair Debt Collection Practices Act Claims (Counts III, IV, and V)**

The plaintiff alleges FDCPA violations under 15 U.S.C. §§ 1692e, 1692d and 1692g(a) against Clover and Franklin.  (ECF No. 1 ¶¶ 217–31.)  The FDCPA prohibits debt collectors from engaging in "any conduct the natural consequences of which is to harass, oppress, or abuse any person," and from using "any false, deceptive, or misleading representation or means" in connection with the collection of any debt.  15 U.S.C. §§ 1692d, 1692e.  To establish an FDCPA violation, a plaintiff must show that (1) he is a "'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt," (2) "the defendant collecting the debt [is] a 'debt collector,'" and (3) the defendant "engaged in an act or omission in violation of the FDCPA's requirements."  *Perez*, 2021 U.S. Dist. LEXIS 198281, at *32 (quoting *Skvarla v. MRS BPO, LLC*, No. 21-CV-55, 2021 U.S. Dist. LEXIS 129323, at *4 (S.D.N.Y. July 12, 2021)).

The plaintiff alleges both that Clover "is not licensed in the State of New York to collect debts" and, "[a]lternatively," that Clover is "duly licensed to collect debts" in New York (ECF No. 1 ¶¶ 141–42); he makes only conclusory allegations that Clover has engaged in any debt collection activity (*id.* ¶ 143, 145).  *See* 15 U.S.C. § 1692a(6) (defining "debt collector" as a person who, among other requirements, is engaged in any "business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect . . . debts owed or due . . . another"); *Perez*, 2021 U.S. Dist. LEXIS 198281, at *32 ("creditors are not considered 'debt collectors' under [the FDCPA] and [its] provisions . . . do not apply to them" (quoting *Reid v. Toyota Motor Credit Corp.*, No. 12-CV-7436, 2013 U.S. Dist. LEXIS 50554, at *18 (S.D.N.Y. Apr. 8, 2013)).  Clover is not a debt collector; it is a creditor, because it was assigned the plaintiff's retail installment contract with Brooklyn Mitsubishi before the plaintiff defaulted.  Accordingly, the plaintiff cannot bring FDCPA claims against it.  (*See* ECF No. 45-1 at 6–7;

ECF No. 45-2; ECF No. 45-3.)  *See Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) (an assignee of a retail installment contractor is a "creditor" and not a "debt collector" under the FDCPA because the debt is not in default at the time of the assignment).

Franklin acknowledges that it is a debt collector.  (ECF No. 48-1 at 3, 8.)  However, the plaintiff does not state an FDCPA claim against it because he does not allege any facts that support a violation, identify any specific conduct by Franklin, or provide any details whatsoever to support the conclusory allegations that Franklin violated various provisions of the statute. Accordingly, he has not given Franklin fair notice of the grounds upon which his claims rest. *Herrera*, 2020 U.S. Dist. LEXIS 122710, at *10 n.7 (citing Fed. R. Civ. P. 8(a)(2)).

     **c.**    **Consumer Financial Protection Act Claim (Count VI)**

The plaintiff's CFPA claim against Clover and Franklin must be dismissed because "no private cause of action exists under [the CFPA]."  *Fraser v. Aames Funding Corp.*, No. 16-CV-448, 2017 U.S. Dist. LEXIS 10491, at *9 (E.D.N.Y. Jan. 24, 2017); *see also Nguyen v. Ridgewood Sav. Bank*, No. 14-CV-1058, 2015 U.S. Dist. LEXIS 64301, at *34–35 (E.D.N.Y. May 15, 2015).  (*See* ECF No. 45-1 at 5–6.)  Rather, "only the Consumer Financial Protection Bureau may bring claims under the statute."  *Fraser*, 2017 U.S. Dist. LEXIS 10491, at *10 (citing 12 U.S.C. § 5564(a)).

     **d.**    **State Law Claims (Counts II, VII, VIII, and IX)**

       *i.*    *New York Fair Credit Reporting Act Claim*

The plaintiff's NYFCRA claim against the Credit Reporting Agencies must be dismissed for the same reasons his FCRA claims fail, because the two statutes are interpreted in the same manner.  *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999).  The claim also must be dismissed against Clover and Franklin because the FCRA "expressly preempts" NYFCRA claims that "concern a defendant's responsibilities as a furnisher of information under the

FCRA." *Owoyemi v. Credit Corp. Sols.*, 596 F. Supp. 3d 514, 520 (S.D.N.Y. 2022) (quoting *Galper v. JPMorgan Chase Bank, N.A.*, 802 F.3d 437, 449 (2d Cir. 2015)).

ii.     *New York General Business Law § 349 Claim*

To state a GBL § 349 claim, a plaintiff must plead "(1) that the defendant's conduct is 'consumer-oriented;' (2) that the defendant is engaged in a 'deceptive act or practice;' and (3) that the plaintiff was injured by this practice." *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26–27 (1995)).  *See also Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (2000).  The plaintiff has not alleged that the defendants' conduct "affect[ed] the consuming public at large," *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 321 (1995); rather, he alleges only "isolated event[s]" between private parties, *Genna v. Sallie Mae, Inc.*, No. 11-CV-7371, 2012 U.S. Dist. LEXIS 54044, at *19 (S.D.N.Y. Apr. 17, 2012).  *See also, e.g.*, *Kilgore v. Ocwen Loan Serv., LLC*, 89 F. Supp. 3d 526, 535 (E.D.N.Y. 2015) ("the gravamen of the complaint must be consumer injury or harm to the public interest"); *Laskowski v. Liberty Mut. Fire Ins. Co.*, No. 11-CV-340, 2011 U.S. Dist. LEXIS 120778, at *7–8 (N.D.N.Y. Oct. 19. 2011) (The plaintiffs "fail[ed] to provide a single fact outside of their immediate experience to support their claims of [the defendant's] deceptive practices.  In alleging only factually-devoid conclusory statements, [the plaintiffs] have failed to state a plausible § 349 claim.") (collecting cases).[16]

---

[16] Additionally, to the extent the plaintiff's GBL § 349 claim concerns Clover and Franklin's conduct as "furnishers," the claim is preempted by the FCRA.  *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011).  To the extent the claim is based on Franklin's debt collection practices, such conduct does not fall within the scope of GBL § 349.  *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 159 (S.D.N.Y. 2015) (explaining that GBL § 601 prohibits deceptive debt collection practices, but does not supply a private right of action, and that "[p]laintiffs cannot circumvent this result by claiming that a Section 601 violation is actionable under Section 349").

### iii.     Invasion of Privacy Claim

The plaintiff's common-law invasion of privacy claim must be dismissed because New York law "does not recognize the common-law tort of invasion of privacy," *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 441 (2000), except to the extent the claim concerns the use of a person's "name, portrait, or picture" for purposes of trade or advertising without that person's consent, N.Y. Civ. Rights Law §§ 50–51; *Augustin v. Capital One*, No. 14-CV-179, 2015 U.S. Dist. LEXIS 129550, at *26 (E.D.N.Y. July 27, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 128599 (E.D.N.Y. Sept. 24, 2015).  The plaintiff makes no allegations related to this exception; accordingly, the claim must be dismissed.[17]

### iv.     Negligent Hiring and Supervision Claim

Finally, the plaintiff does not state a negligent hiring and supervision claim against the Credit Reporting Agencies, Clover, or Franklin.  He does not name or describe any of the defendants' employees, *Williams v. Bayview Loan Servicing, LLC*, No. 14-CV-7427, 2016 U.S. Dist. LEXIS 7760, at *37 (E.D.N.Y. Jan. 22, 2016), or specify what any of them is supposed to have done—and certainly not that the defendants "knew or should have known of the employee[s'] propensity for the [tortious] conduct which caused the injury prior to the injury's occurrence," *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).[18]

---

[17] The claim must also be dismissed because it is preempted by the FCRA.  (*See* ECF No. 43 at 23.)  The FCRA preempts invasion of privacy claims except where a plaintiff alleges that the defendant furnished the false information "with malice or willful intent to injure," 15 U.S.C. § 1681h(e); the plaintiff does not do so here.

[18] In his oppositions to Clover and Franklin's motions, the plaintiff claims for the first time that the defendants recently "pulled" the plaintiff's credit report "without a permissible purpose."  (ECF No. 49 at 11–12; ECF No. 50 at 11–12.)  The plaintiff cannot amend its complaint "by asserting new facts or theories for the first time in opposition to [the d]efendants' motion to dismiss."  *Thomas v. City of New York*, No. 12-CV-5061, 2023 U.S. Dist. LEXIS 102814, at *7–8 (E.D.N.Y. July 23, 2013).  In any event, the claim is deficient for multiple reasons (*see* ECF No. 55 at 6–7), including because "soft

**CONCLUSION**

For these reasons, the defendants' motions to dismiss are granted. Because the Court

dismisses this action for lack of subject-matter jurisdiction, the dismissal is without prejudice.

*Evans v. Adams*, No. 22-CV-3882, 2024 U.S. Dist. LEXIS 14468, at *13–14 (E.D.N.Y. Jan. 26,

2024).

The Court will allow the plaintiff another opportunity to amend his complaint, but only as

to certain claims. *See Harty*, 28 F.4th at 445 ("A dismissal for lack of jurisdiction without leave

to amend is not the same thing as a dismissal with prejudice."). Generally, a court should grant a

*pro se* plaintiff leave to amend "[i]f a liberal reading of the pleading gives any indication that a

valid claim might be stated." *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 125

(E.D.N.Y. 2011). However, "leave to amend may be properly denied if the amendment would

be futile." *Monbo v. Nathan*, 623 F. Supp. 3d 56, 143 (E.D.N.Y. 2022). A complaint is futile

when, as a matter of law, any "proposed amendments would fail to cure prior deficiencies." *Id.*

Where the deficiencies are substantive rather merely the consequence of "inartful" pleading,

repleading would be futile and leave to amend should be denied. *Id.* at 144. "[L]eave to amend

is not warranted 'where it is clear from the face of the complaint that the Court lacks subject

matter jurisdiction or that a claim cannot be stated as a matter of law.'" *Hardie v. United States*,

501 F. Supp. 3d 152, 162 (E.D.N.Y. 2020) (citations omitted).

Accordingly, the Court grants the plaintiff leave to replead the following claims:

- the FCRA Section 1681e(b), 1681g, and 1681i claims (and corresponding NYFCRA
  claims) against the Credit Reporting Agencies;

---

pulls" by existing creditors "have no impact on credit," so the plaintiff could not show that he suffered
an actual injury as a result. *Rosenberg v. LoanDepot Inc.*, No. 21-CV-8719, 2023 U.S. Dist. LEXIS
22495, at *4 (S.D.N.Y. Feb. 9, 2023).

- the FCRA Section 1681s-2(b) claim against Clover and Franklin;

- the FDCPA claims against Franklin; and

- the GBL Section 349, invasion of privacy, and negligent hiring and supervision claims against all defendants.

The plaintiff may not replead:

- the FCRA Section 1681e(b), 1681g, and 1681i claims against Clover and Franklin;

- the FCRA Section 1681s-2(b) claim against the Credit Reporting Agencies;

- the FDCPA claims against the Credit Reporting Agencies and Clover;

- the NYFCRA claims against Clover and Franklin; and

- the FCRA Section 1681n, 1681o, and 1681s-2(a) claims against all the defendants; and

- the CFPA claims against all the defendants.

The plaintiff's amended complaint is due within 30 days of the date of this order. The plaintiff is encouraged to contact the Federal Pro Se Legal Assistance Project for assistance with filing his amended complaint. If the plaintiff does not amend the complaint within 30 days, judgment dismissing the action as to the moving defendants will enter.

**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      March 27, 2024